# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
BOGDAN K.                     :     Civ. No. 3:20CV01341(SALM)
                              :
v.                            :
                              :
KILOLO KIJAKAZI,              :
ACTING COMMISSIONER,          :
SOCIAL SECURITY               :
ADMINISTRATION[1]             :     August 9, 2021
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Bogdan K. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse and remand the Commissioner's decision for a calculation of benefits or, in the alternative, to remand for further administrative proceedings. [Doc. #18]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #21]. Plaintiff has filed a reply to defendant's motion. [Doc. #22].

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021. She is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

For the reasons set forth below, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #18]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **DENIED**.

I.    **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for DIB on September 21, 2017, alleging disability beginning February 1, 2017. See Certified Transcript of the Administrative Record, Doc. #13, compiled on January 4, 2021, (hereinafter "Tr.") at 191-92. Plaintiff's application was denied initially on April 18, 2018, see Tr. 117-26, and upon reconsideration on August 2, 2018. See Tr. 129-31.

On March 20, 2019, plaintiff, represented by Attorney Joyce Samuel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Louis Bonsangue. See generally Tr. 37-70, Tr. 75-78. Vocational Expert ("VE") Edmond J. Calandra appeared and testified by telephone at the hearing. See Tr. 71-75. On April 15, 2019, the ALJ issued an unfavorable decision. See Tr. 14-30. On July 16, 2020, the Appeals Council

---

[2] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts [Doc. #18-2], to which defendant filed a responsive Statement of Facts [Doc. #21-2].

denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's April 15, 2019, decision the final decision of the Commissioner. See Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal

3

standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d
Cir. 1999)). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have [his] disability determination
made according to the correct legal principles." Johnson v.
Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

   "[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human
Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to

4

determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that an impairment or combination of impairments "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be

7

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ
concluded that plaintiff "was not under a disability, as defined
in the Social Security Act, at any time from February 1, 2017,
the alleged onset date, through March 31, 2017, the date last
insured[.]" Tr. 30.

At step one, the ALJ found that plaintiff "did not engage
in substantial gainful activity" during the relevant period.[3] Tr.
19. At step two, the ALJ found that, "[t]hrough the date last
insured," plaintiff suffered from the severe impairments of:
"Depressive Disorder..., Anxiety Disorder..., Substance Abuse
Disorder..., cervicalgia..., and tremors[.]" Id. The ALJ found
that plaintiff's epilepsy was a non-severe impairment during the
relevant period. Tr. 20.

At step three, the ALJ determined that "[t]hrough the date
last insured," plaintiff "did not have an impairment or
combination of impairments that met or medically equaled the
severity of one of the listed impairments in 20 CFR Pt. 404,
Subpt. P, App. 1[.]" Id. The ALJ specifically considered

---

[3] As will be discussed further below, the "relevant period" as
referred to by the ALJ is from February 1, 2017, through March
31, 2017. See Tr. 19.

"listings 12.04 (Depressive, Bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders)[.]" <u>Id.</u> (sic).

Before moving on to step four, the ALJ found that, "through the date last insured," plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the additional limitations described in this paragraph. The claimant cannot climb ladders ropes or scaffolds and must avoid moving parts and unprotected heights and automotive equipment. He could perform simple and routine tasks for 2 hour intervals but is precluded from working in a fast-paced work environment. He cannot tolerate interactions with the public and could tolerate only superficial interactions with coworkers and supervisors and he is precluded from performing collaborative type tasks or efforts.

Tr. 21-22 (sic).

At step four, the ALJ concluded that "[t]hrough the date last insured," plaintiff "was unable to perform any past relevant work[.]" Tr. 28. At step five, considering plaintiff's "age, education, work experience," and RFC, the ALJ found that "[t]hrough the date last insured ... there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed[.]" <u>Id.</u>

## V.   <u>DISCUSSION</u>

Plaintiff raises several arguments in favor of reversal and/or remand. <u>See generally</u> Doc. #18-1. For the reasons stated below, the Court finds that the ALJ erred in his evaluation of plaintiff's credibility. Before addressing the merits of the

parties' arguments, the Court begins with a review of the relevant time period in this case.

A.    Relevant Time Period

Plaintiff's claim is for DIB. See Tr. 191-92. A claimant seeking DIB for a period of disability must, in addition to presenting evidence of his or her disability, also satisfy the "insured status" requirements of the Act. See 42 U.S.C. §423(a), (c). To be entitled to benefits, plaintiff must demonstrate that he was disabled prior to the expiration of his insured status, i.e., his date of last insured ("DLI"). See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's DLI is March 31, 2017. See Tr. 19. Accordingly, and as acknowledged by the ALJ, the relevant time period under consideration is the alleged onset date of February 1, 2017, through March 31, 2017, plaintiff's DLI. See Tr. 24.

Defendant relies heavily on the relevant time period to support her position that substantial evidence supports the decision of the ALJ. See Doc. #21-1 at 1 ("This case involves a very short relevant time period from the alleged onset date of February 1, 2017, to the date last insured of March 31, 2017. And while the record contains over 1,000 pages of medical records, only a handful are from the relevant period."); id. at

10

4 (stating that the relevant time period is "vitally
important"). Plaintiff states in reply that "evidence after the
DLI may be pertinent, and retrospective diagnosis, i.e., after
DLI may also be pertinent." Doc. #22 at 2. Plaintiff asserts
that "Defendant's implicit suggestion that the only relevant
records are those within a two month period is both contrary to
the law, and a post-hoc rationalization of the ALJ's decision."
Id.

    The Second Circuit has

        observed, repeatedly, that evidence bearing upon an
        applicant's condition subsequent to the [DLI] is
        pertinent evidence in that it may disclose the severity
        and continuity of impairments existing before the
        earning requirement date or may identify additional
        impairments which could reasonably be presumed to have
        been present[.]

Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004) (citation
and quotation marks omitted). Medical records post-dating the
DLI may "bolster the credibility of [plaintiff's] subjective
complaints." Lisa v. Sec'y of Dep't of Health & Hum. Servs. of
U.S., 940 F.2d 40, 44 (2d Cir. 1991); accord Ventura v.
Barnhart, No. 3:04CV01401(SRU)(WIG), 2006 WL 1272668, at *20 (D.
Conn. Feb. 2, 2006).

    B.   Credibility Determination

    Plaintiff appears to contend that the ALJ erred in his
credibility determination. See generally Doc. #18-1 at 4-8.
Defendant does not address the ALJ's credibility determination

11

in her briefing, and instead focuses on the contention that substantial evidence generally supports the decision of the ALJ. See generally Doc. #21-1.

      *1. Applicable Law*

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The Regulations set forth a two-step process that an ALJ must follow in evaluating a plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §404.1529(b). Second, the ALJ must assess the credibility of plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §404.1529(c).

In making this assessment, the ALJ should consider factors relevant to plaintiff's symptoms, "such as [his] daily activities, duration and frequency of pain, medication, and treatment." Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017); see also 20 C.F.R. §404.1529(c)(3). The ALJ must consider all evidence in the

12

record. See Social Security Ruling 16-3P, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017).

> 2. *Analysis*

After summarizing plaintiff's testimony, the ALJ concluded: "The overall evidence of record partially supports the claimant's statements regarding having such severe symptoms and such severe functional limitations." Tr. 23. In support of this adverse credibility finding, the ALJ primarily relied on: (1) the consistency of plaintiff's testimony with a Disability Report; and (2) plaintiff's self-reported activities of daily living. See Tr. 23-24.

> a) *Disability Report*

With respect to the Disability Report, the ALJ stated:

> One strong indication of persuasiveness of an individual's statements is their consistency, both internally and with other information in the case record[.] The claimant testified to significant limitations from neck pain, numbness in the upper extremities and dizziness. However, the claimant submitted a Disability Report, when he initially filed for disability benefits and he did not allege any problems or limitations from neck pain, numbness in the upper extremities and dizziness. That is, even while the claimant was asked to list all of his physical and mental impairments that prevented him from working, he did not allege any mental limitations from neck pain, numbness in the upper extremities and dizziness[.] This undermines the persuasiveness of the claimant's statements that, during the relevant period, he had such severe functional limitations from neck pain, numbness in the upper extremities and dizziness.

Tr. 23 (citations omitted). The Disability Report is not inconsistent with plaintiff's testimony so as to support a negative credibility finding. First, the form does not ask for "problems" or "limitations[.]" Tr. 23. Rather, the form directs: "List all of the physical or mental conditions ... that limit your ability to work." Tr. 228. Plaintiff listed: anxiety and dystonic tremor. Id. A follow-up question then asks if these "conditions cause you pain or other symptoms[]" to which plaintiff responded: "Yes[.]" Id.

The ALJ's adverse credibility determination was erroneously based on a fundamental misreading of the Disability Report. See Turkus v. Astrue, No. 11CV03887(FB), 2012 WL 3877617, at *4 (E.D.N.Y. Sept. 7, 2012) (remanding for further administrative proceedings where ALJ's credibility determination was "based on a fundamental misreading of the record[]"). Plaintiff's statements in the Disability Report do not contradict plaintiff's testimony, given that the Disability Report addresses the conditions that cause plaintiff pain and other symptoms, i.e., the neck pain, dizziness, numbness, and resulting limitations to which plaintiff testified at the administrative hearing. See generally Tr. 57-69.

Additionally, it is unclear whether the ALJ meaningfully considered the evidence post-dating plaintiff's DLI when evaluating plaintiff's credibility. Although the ALJ's decision

14

contains the familiar boilerplate that he considered "all the evidence," it is difficult to discern from the decision the extent to which he actually considered those records. Tr. 17. For example, the decision fails to substantively discuss any evidence post-dating the DLI, other than the medical opinions, which the ALJ is required to consider. See Tr. 24 ("[T]his decision will focus on the claimant's condition and functional abilities during the relevant time period."). This is significant because medical evidence post-dating the DLI bolsters the credibility of plaintiff's subjective complaints.

Plaintiff first complained of symptoms of cervical dystonia[4] in 2015, well before the alleged onset date. See, e.g., Tr. 295 (October 10, 2015, treatment note stating plaintiff had experienced pressure in his head since June); Tr. 307 (June 16, 2015, treatment note recording plaintiff's complaints of "a very strong headache and a crushing sensation on the sides of his

---

[4] Plaintiff explains that cervical dystonia, also called spasmodic torticollis, is a "movement disorder ... caused by a dysfunction of the brain. The symptoms are caused by intermittent or sustained contractions of the muscles around the neck which control the position of the head. ... [S]ome patients experience tremors in the head or arms. [It] is usually accompanied by constant and extreme pain[, and] ... can resemble other disorders including ... epilepsy[.]" Doc. #18-1 at 2 n.2 (citation omitted). The symptoms of cervical dystonia "generally begin gradually and then reach a point where they don't get substantially worse. There is no cure for cervical dystonia[, and] sustained remissions are uncommon." Id. at 2 (footnote omitted).

head."); Tr. 313-15 (October 28, 2016, Emergency Department Report: Plaintiff presented to the ED with "generalized tremors that began one week ago[.]"). Plaintiff's complaints were initially diagnosed as somatic responses to his anxiety. See, e.g., Tr. 305 (noting that doctors had attributed the "'crushing' sensation" in plaintiff's head to anxiety); Tr. 316 ("[Y]our tremor is likely secondary to your ongoing anxiety.").

Plaintiff continued to present with symptoms typical of cervical dystonia during the relevant period. See, e.g., Tr. 382-83 (February 17, 2017, treatment records reporting "Tremor" as an "Active Problem"); Tr. 376-77 (March 10, 2017, exam reflecting a "bilateral tremor at rest"); Tr. 549-50 (March 21, 2017, record, noting plaintiff has been tremulous and stuttering for last two weeks and "unable to work[]"); Tr. 548 (March 29, 2017, record noting plaintiff's tremors and that he was to be tested for "MS and Parkinson"). Despite this, plaintiff was not diagnosed with cervical dystonia until 6 weeks after his DLI. See Tr. 354.

The record consistently reveals, before, during and after the relevant time period, that: (1) plaintiff's neck pain and tremors began shortly before the relevant time period, and continued through the DLI; and (2) his symptoms are aggravated by walking and standing, and alleviated by laying down. See Tr. 239, Tr. 316, Tr. 355, Tr. 357, Tr. 362, Tr. 373, Tr. 397, Tr.

548, Tr. 559, Tr. 716, Tr. 862, Tr. 1233, Tr. 1239. Plaintiff's
complaints of dizziness, tremors, and neck pain, and the
resulting limitations, are also consistently documented
throughout the record, including after the relevant time period.
See, e.g., Tr. 291, Tr. 293, Tr. 326, Tr. 483, Tr. 885, Tr. 1055
(Dizziness); Tr. 373, Tr. 397, Tr. 403, Tr. 459, Tr. 483, Tr.
857, Tr. 858 (difficulty concentrating due to tremors); Tr. 426,
Tr. 483, Tr. 560, Tr. 586, Tr. 619, Tr. 862 (neck pain); Tr.
562, Tr. 619 (plaintiff reported that activity, including,
standing and walking triggers his pain and tremors); Tr. 662
(Plaintiff's "diagnosis of cervical dystonia[ ...] continues to
decrease his ability to perform ADLs[.]"). This evidence of
record is generally consistent with plaintiff's testimony at the
administrative hearing. See Tr. 69 (testimony that the tremors
and other symptoms worsened in 2016); Tr. 48 (testimony that
plaintiff "tr[ies] to walk around but ... can't ... creates it
worse[]" (sic)); Tr. 62-63 (discussing pain and spasms which
occurred a year and a half before the hearing).

   Thus, compounding the ALJ's misreading of the Disability
Report is the question of whether the ALJ meaningfully
considered the entire record, including evidence post-dating the
DLI, when evaluating the consistency of plaintiff's statements.
"These records, however, should have been considered for
purposes of lending credence to Plaintiff's testimony and the

severity of h[is] condition prior to h[is] date last insured."
<u>Ventura</u>, 2006 WL 1272668, at *22.[5]

Accordingly, the ALJ's finding that plaintiff's testimony
was inconsistent with the record is not supported by substantial
evidence.

<i>b)   Function Report</i>

The ALJ also relied on a Function Report completed by
plaintiff on March 2, 2018, to support his adverse credibility
determination. <u>See</u> Tr. 24; <u>see also</u> Tr. 238-45 (Function
Report). The ALJ found that the Function Report

> described a relatively high level of functioning despite
> his impairment(s) (Exhibit B5E). The claimant stated
> that he could prepare simple meals and noted that he is
> able to drive a car, and stated that he is able to go
> out alone (Exhibit B5E, page 5). Furthermore, he
> indicated that he goes shopping in stores and noted that
> he is able to pay bills, count change, and handle a
> savings account and use a checkbook (<u>Id,</u> page 5).
> Furthermore, he indicated that he enjoys playing the
> guitar, and noted that he enjoys going fishing and
> working on cars, and noted that he was playing soccer
> about once per week. Furthermore, the claimant indicated
> in his report that he spends time with others (<u>Id,</u> page
> 6). ... [O]verall, the claimant described a relatively
> high level of functioning despite his impairments.

Tr. 24 (sic). The ALJ misconstrued the substance of plaintiff's
Function Report.

---

[5] The evidence post-dating the DLI also sheds light on "the
severity and continuity of impairments existing before the earning
requirement date" and potentially "identif[ies] additional
impairments which could reasonably be presumed to have been
present" during the relevant time period. <u>Pollard</u>, 377 F.3d at
193-94.

First, although plaintiff reported that he prepares his own
meals, he explained that he makes "[s]imple microwave meals,
sandwich ... <u>weekly</u> -- usually my wife makes most of the meals."
Tr. 240 (emphasis added). Plaintiff continues: "Most of the
meals my wife cooks because I cannot function in the kitchen and
it takes too or is too dangerous to use the equipment[.]" Tr.
240 (sic). This does not suggest that plaintiff retains "a
relatively high level of functioning[.]" Tr. 24.

Second, although plaintiff reported that he could drive a
car, he stated he could only do so "short distances" and "only
on good days[.]" Tr. 241; <u>see also</u> <u>id.</u> (Plaintiff can drive
"[b]ut only 5 miles or less because of the shaking and pain[.]
When I shake so much, it moves the steering wheel so much I
cannot control the car."). Similarly, plaintiff reported that he
can "go out alone[,]" but that he "can only go short distances
by myself." <u>Id.</u> These statements, taken as a whole, do not
support the finding that plaintiff retains "a relatively high
level of functioning[.]" Tr. 24.

Third, the ALJ stated that plaintiff reported "he goes
shopping in stores[.]" <u>Id.</u> Plaintiff did state that he shops in
stores, but only "3 times a month" for "little items[]" and that
his "daughter comes with me so she helps me. ... I pick up very
few things. My wife does all the grocery shopping." Tr. 241.
Again, these statements do not support the finding that

plaintiff "retains a relatively high level of functioning[.]" Tr. 24.

Fourth, as to plaintiff's hobbies and interests, plaintiff stated he "**used** to play guitar, go fishing, working on special cars, play soccer." Tr. 242 (emphasis added). Plaintiff later states later states on the form that he "cannot do" these activities. Id.; see also Tr. 243 ("I used to go fishing with a neighbor once a month, but now I can no longer go.").

Last, the ALJ noted that plaintiff reported spending time with others. See Tr. 24. Again, this is true, but does not present an entirely accurate picture. Plaintiff stated that he "spend[s] time with wife kids [with whom he lives], but I isolate myself from everyone else. I am embarrassed for people to see how I look because I shake all the time." Tr. 242; see also Tr. 243 (Plaintiff states that he no longer goes to parties because he does not want people to see him shaking).

Simply, the totality of the Function Report does not "describe[] a relatively high level of functioning despite [plaintiff's] impairments," as found by the ALJ. Tr. 24. Instead, a plain reading of the Function Report suggests that the ALJ improperly cherry-picked statements from the Function Report to support his findings, while ignoring conflicting evidence from the same source. Indeed, there is a strong suggestion that there has been "a serious misreading of

evidence, or failure to comply with the requirement that all evidence be taken into account, or both." Dowling v. Comm'r of Soc. Sec., No. 5:14CV00786(GTS)(ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) (citing Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010)).

Accordingly, the ALJ's credibility determination is not supported by substantial evidence and is "patently unreasonable." Pietrunti, 119 F.3d 1035.[6]

C.   Evaluation of the Medical Opinion Evidence

Plaintiff also asserts that the ALJ failed to properly evaluate the persuasiveness of the Physical Residual Functional Capacity questionnaire completed by Dr. Karl Dauphinais (hereinafter the "Dauphinais opinion"). See Doc. #18-1 at 10-13; see also Tr. 1027-33 (Dauphinais opinion). With respect to the Dauphinais opinion the ALJ stated:

> [O]verall, the opinion is not very convincing evidence. Dr. Karl Dauphinais provided his opinion in a checklist type form without providing adequate explanation and objective findings for the checked items in the report. ... In addition, as noted earlier, my goal is to assess the claimant's functional abilities prior to the date last insured of March 31, 2017, and Dr. Karl Dauphinais' report is dated April 7, 2018, which is about one year after the date last insured. Furthermore, as noted earlier, the claimant's medical treatment notes from

---

[6] In making the adverse credibility determination, the ALJ also relied on his personal observations of plaintiff at the administrative hearing. See Tr. 23-24. This, however, does not overcome the ALJ's gross misreading of the Disability Report and Function Report.

Hartford Hospital and Bristol Hospital, as discussed
earlier showed that the claimant had relatively benign
physical examinations (Exhibits B2F, pages 8 and 16 and
B3F, pages 3, 5, 6).

Tr. 26.

The Court does not reach the merits of this issue in light
of the conclusion that the ALJ's credibility determination is
not supported by substantial evidence. However, it nevertheless
bears noting that the ALJ's decision fails to acknowledge: (1)
the explicitly retrospective nature of the Dauphinais opinion,
see Tr. 1031; (2) the explanations and objective support
provided in the Dauphinais opinion, see Tr. 1027, Tr. 1030; and
(3) Dr. Dauphinais' supporting longitudinal treatment notes.
See, e.g., Tr. 396-97 (November 2016 treatment note assessing
plaintiff with a tremor and contemplating a MRI of the brain in
light of plaintiff's symptoms); Tr. 377 (March 2017 examination
noting bilateral tremor at rest and "[n]ormal speech with
intermittent stuttering"); Tr. 372-74 (October 2017 examination
noting "rhythmic head bobbing"); Tr. 369 (December 2017
examination noting constant tremor in plaintiff's head and upper
body); Tr. 623 (March 2018 examination revealing tremor of neck
and head); Tr. 619 (June 2018 examination noting plaintiff's
involuntary movements); Tr. 1103 (September 2018 examination
noting plaintiff's head tremor and bobble).

Given the ALJ's misreading of the other evidence in the record, this also raises concerns that the ALJ did not meaningfully consider the consistency and supportability of the Dauphinais opinion. Accordingly, on remand, the ALJ shall re-evaluate the Dauphinais opinion, and other medical opinions of record, in accordance with 20 C.F.R. §404.1520c.

D.    Remand for Further Administrative Proceedings

Plaintiff "submits that the Decision should be reversed and remanded for calculation of benefits[.]" Doc. #18-1 at 24. Defendant responds that "reversal for payment of benefits is not appropriate in this case[,]" because there is not persuasive proof of total disability "during the two-month relevant period[.]" Doc. #21-1 at 17.

"Sentence four of 42 U.S.C. §405(g) provides that, after reviewing the Commissioner's determination, a court may: enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (quotation marks and footnote omitted). Reversal with a remand solely for a calculation of benefits is an appropriate remedy only where "the record provides persuasive evidence of total disability that renders any further proceedings pointless." Stacey v. Comm'r of Soc. Sec. Admin., 799 F. App'x

23

7, 11 (2d Cir. 2020) (citation and quotation marks omitted); see also Munford v. Apfel, No. 97CV05270(HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998) ("[T]he determination of whether a remand would serve no purpose is a forward-looking analysis. That is, the district court evaluates whether it would be pointless to remand a case since the totality of evidence the ALJ will consider suggests only one result."). Here, a further review of the medical evidence would "plainly help to assure the proper disposition of the claim[.]" Butts, 388 F.3d at 385. Moreover, given the errors claimed by plaintiff, including that the ALJ failed to properly evaluate his credibility, a remand for further proceedings, as opposed to a remand for a calculation of benefits, is the appropriate remedy.

Finally, this case does not have a history of a prior remand. "The 'no purpose' remand[] ... is grounded in equitable considerations and is often deployed where prior administrative proceedings and litigation have consumed an inordinate length of time." Munford, 1998 WL 684836, at *2. Such equitable considerations are not present here.

Accordingly, this matter is hereby remanded for further administrative proceedings consistent with this Ruling. Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate for further consideration of the evidence.

## VI.  <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #18]** is **GRANTED,** to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 9th day of August, 2021.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE